## THE EUREKA NO. 93.

### BERWIND–WHITE COAL MINING CO. v. CITY OF NEW YORK et al.

#### No. 13936.

District Court, E. D. New York.
June 29, 1934.

Macklin, Brown, Lenahan & Speer, of New York City (Richard F. Lenahan, of New York City, of counsel), for libellant.

Paul Windels, Corp. Counsel, of New York City (P. Fearson Shortridge, of New York City, of counsel), for respondent City of New York.

Foley & Martin, of New York City (James A. Martin, of New York City, of counsel), for Bouker Contracting Co.

BYERS, District Judge.

On March 11, 1933, libellant's barge Eureka 93 was at the 74th Street Interborough Rapid Transit dock, East River, unloading coal; the task was not completed because 250 tons remained on board at the close of day. A light barge Eureka 96 was then moored outside of 93. Thus the former was somewhat deeper in the water than the latter.

About 12:30 a. m. on the following day the bargee was awakened by a "heavy jar." Making his way to the deck he observed that all lines to the dock had parted, and he put out additional lines, although his boat was not drifting.

As the tide fell, the 93 listed toward the dock to the extent of 18 inches.

The 93 was headed down river, from which it follows that the mooring was at the outboard end of the dock. At about 5:30 a. m. she started to right herself, with the change of tide (to flood), and about 5:45 to 6:00 o'clock the bargee "observed something come from under the stern of his boat," he describes it as the corner of a scow. About noon he saw a sunken mud scow in the vicinity of 79th Street, on the side of which were discernible "D. S. #20"; if other letters or numbers were there he could not make them out.

The 93 was continued in service from that day until June 8th, when she was taken to drydock and damage was found on her bottom.

On March 9th, the bargee, being at the 74th Street Power House, saw a sunken mud scow lying at the city dump at 72nd Street.

The foregoing is taken from a stipulation that the bargee, if called, would so testify. His physical condition caused by asthma was responsible for the making of the stipulation.

From the answers to interrogatories filed by the City of New York, it appears:

The D. S. Scow #202 was found in a sunken condition, aground at 74th Street and East River, in the afternoon of March 12, 1933, where she was picked up; that she went adrift in a sunken condition from the Department of Sanitation Dump at 72nd Street and the East River on March 11, 1933, at about 11:40 a. m. The scow is a bottom dumper, 134 feet long, 37 feet wide and 14 feet deep, and had a deck cabin which was carried away.

The foregoing comprehends all the evidence in the case, since the respondent City of New York and the impleaded respondent, Bouker Contracting Company, rested at the close of libellant's case.

The question is, has the libellant sustained its burden of proof that, as alleged in the libel, " * * * the D. S. Scow No. 202, adrift in a sunken condition, came into contact with the said barge 'Eureka No. 93,' parting six of her mooring lines and causing considerable damage to the hull of the said barge 'Eureka No. 93' before she floated clear"?

As to the foregoing there is no admission in the answer.

The Court is asked to infer that D. S. Scow 202 struck the Eureka 93 so as to damage her bottom, the bases of the inference being (a) that the scow went adrift in a sunken condition from the 72nd Street dump on the previous day, (b) that she was picked up in the same condition, aground at 74th Street, on the afternoon of the day that the damage is said to have been done, and (c) that the bargee observed at 5:45 a. m. that morning the corner of a scow come from under the stern of the #93.

The City could have undertaken to demonstrate that the sunken scow picked up at 74th Street could not have done this damage, by showing that the depth of water under the #93 at 5:45 a. m. on March 12, 1933, was insufficient to admit of the presence of D. S. Scow 202. This it did not seek to establish; and it is reasonable to infer that the lack of such effort was deliberate and sagacious.

It has been shown, therefore, that the City permitted a sunken scow to drift around in the tide in the vicinity of the libellant's barge for over 12 hours, and that the latter was struck an under-water blow while that scow was adrift.

If the City was content to let the case rest on this showing, it is not thought that the

Court should be astute to find reasons why the proof should be deemed insufficient. The scow was a menace to all navigation and craft in the area of its capacity to drift, and if the City had reason to demonstrate that it was not to blame for this damage, some evidence to that effect would have been appropriate.

The damage could not have been of heroic proportions or the 93 could not have continued in service for nearly three months, but that is for the commissioner.

Libellant may take the usual decree against the respondent, City of New York, with costs. There was no proof offered against the respondent-impleaded, and the petition as to it is dismissed with costs.

Settle decree on notice.